**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| VANESSA GASKIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-18-4741 |
| | § | |
| PHILLIPS 66 CO., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**[*]

In December 2018, Vanessa Gaskin, an African-American woman, sued Phillips 66 Company, her former employer, for discrimination after the company fired her. (Docket Entry No. 1). Her termination date was two days after her 55th birthday. (Docket Entry No. 19-1 at 4). Gaskin asserted race-discrimination claims under 42 U.S.C. § 1981 and Title VII, 42 U.S.C. § 2000e, *et seq.*, and a claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (*Id.*). After discovery, Phillips 66 moved for summary judgment, Gaskin responded, and Phillips 66 replied. (Docket Entry Nos. 19, 25–27).

Based on a careful review of the pleadings, the motions, the record, and the applicable law, the court grants Phillips 66's motion for summary judgment and, by separate order, enters final judgment. The reasons for this ruling are set out in detail below.

**I.     Background**

    **A.     The Summary Judgment Evidence**

The record includes the following exhibits submitted by Vanessa Gaskin:

1. Gaskin's Texas Workforce Commission Civil Rights Division Charge of Discrimination, (Docket Entry No. 25-1 at 1).

---

[*] This Memorandum and Order cites ECF Docket Entry page numbers except in deposition citations, which refer to original transcript page and line numbers.

2. Gaskin's deposition transcript, (*id.* at 7).
3. The Phillips 66 Payroll Analyst job description, (*id.* at 37).
4. The Phillips 66 letter informing Gaskin that she would be fired, (*id.* at 39).
5. The Phillips 66 Progressive Discipline Policy, (*id.* at 41).
6. The Phillips 66 Employment of Relatives Policy, (*id.* at 44).
7. The Phillips 66 Position Statement to the Equal Employment Opportunity Commission, (Docket Entry No. 26-7).

Phillips 66 submitted the following evidence:

1. The declaration of Krystle King, Gaskin's supervisor, (Docket Entry No. 19-1 at 1).
2. The Phillips 66 Equal Employment Opportunity Policy, (*id.* at 6).
3. Excerpts from the Phillips 66 Code of Business Ethics and Conduct, (*id.* at 10).
4. The Phillips 66 Employment of Relatives Policy, (*id.* at 23).
5. An August 3, 2017, email from Gaskin to Danielle Brunner, a Phillips 66 human-resources associate, with an attached resume, (*id.* at 26).
6. An August 10, 2017, email from April Hurley of Kelly Services, a staffing agency, to Gaskin, with attached resumes, (*id.* at 30).
7. August 2017 emails between April Hurley and Gaskin, (*id.* at 42).
8. A September 22, 2017, email from Gaskin, (*id.* at 46).
9. September 22, 2017, emails between April Hurley and Gaskin, (*id.* at 48).
10. A summary of the Phillips 66 investigation into Gaskin's conduct, (*id.* at 50).
11. Gaskin's deposition transcript, (Docket Entry No. 19-2).
12. Gaskin's Texas Workforce Commission Civil Rights Division Charge of Discrimination, (Docket Entry No. 19-3).
13. Gaskin's resume, (Docket Entry No. 19-4).

This summary judgment evidence is considered against the applicable legal standards.

**B.     The Applicable Legal Standards**

**1.     Summary Judgment**

"Summary judgment is appropriate only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Vann v. City of Southaven*, 884 F.3d 307, 309 (5th Cir. 2018) (per curiam) (quoting *Hanks v. Rogers*, 853 F.3d 738, 743 (5th Cir. 2017)). "A genuine dispute of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (quoting *Savant v. APM Terminals*, 776 F.3d 285, 288 (5th Cir.

2014)). "The moving party 'always bears the initial responsibility of informing the district court of the basis for its motion[.]'" *Brandon v. Sage Corp.*, 808 F.3d 266, 269–70 (5th Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.'" *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995) (per curiam)). While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to disprove the opposing party's case. *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014). A fact is material if "its resolution could affect the outcome of the action." *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "If the moving party fails to meet [its] initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001)). In deciding a motion for summary judgment, the court resolves all reasonable inferences in favor of the nonmoving party. *City and Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1769 (2015).

### 2. Race Discrimination

"[T]he 'inquiry into intentional discrimination is essentially the same for individual actions brought under section[] 1981 . . . and Title VII.'" *Lauderdale v. Tex. Dep't of Crim. Justice, Institutional Div.*, 512 F.3d 157, 166 (5th Cir. 2007) (quoting *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)). Employment discrimination under both can be proved "by either

3

direct or circumstantial evidence." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). Evidence is direct if it would prove the fact in question "without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002). If no direct evidence exists, the court uses the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), to determine whether summary judgment is appropriate. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004).

> The legal standard is well settled:
>
> To survive summary judgment under *McDonnell Douglas*, the plaintiff must first present evidence of a *prima facie* case of discrimination. If the plaintiff presents a *prima facie* case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the underlying employment action. If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination.

*Davis*, 383 F.3d at 317 (citations omitted, italics added).

The elements of a *prima facie* showing of race discrimination are that the plaintiff: "(1) is a member of a protected class, (2) was qualified for the position that she held, (3) was subject to an adverse employment action, and (4) was replaced by someone outside of her protected class or treated less favorably than other similarity-situated employees who were not in her protected class." *Harville v. City of Houston, Miss.*, 945 F.3d 870, 875 (5th Cir. 2019).

The defendant's burden of articulating a legitimate, nondiscriminatory reason for its adverse employment action is a burden of production, not persuasion. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (1993). The "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 507 (quotation marks omitted). The defendant must produce "admissible evidence, . . .

which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action." *Id.* at 507.

If the employer meets its burden, the *prima facie* case dissolves, and the burden shifts back to the plaintiff to raise a factual dispute material to determining either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)). "Once a Title VII case reaches the pretext stage, the only question on summary judgment is whether there is a conflict in substantial evidence to create a jury question regarding discrimination." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999).

Gaskin argues that Phillips 66's grounds for termination were pretextual; she does not also contend that race was a motivating factor. (Docket Entry No. 25 at 4). "To establish pretext, [the plaintiff] must show that [the employer]'s proffered explanation is false or unworthy of credence." *Vaughn*, 665 F.3d at 637 (quotation marks omitted). If the plaintiff can produce evidence that, when viewed in the light most favorable to her, would allow a jury to believe that the employer's reason was mere pretext for intentional discrimination, "[s]uch rebuttal evidence, combined with the *prima facie* case, will suffice to create a genuine issue of material fact such that summary judgment is inappropriate." *Id.* at 637–38 (italics added).

In evaluating pretext, including in a disparate discipline case, the focus is on whether the employer used a discriminatory factor when making the adverse employment decision, not whether the employer acted wisely or based its decision on an accurate understanding of the facts. *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995). Title VII does not require

objectively fair-minded or well-reasoned business decisions. *Id.* It does require that employers refrain from making business decisions on a prohibited basis, including race discrimination. *Id.* The question is whether the employer had a good-faith belief that the facts that motivated the adverse action were true and warranted the action. *Id.*; *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010).

### 3. Age Discrimination

The Age Discrimination in Employment Act makes it unlawful for a private-sector employer "to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "Unlike Title VII, [§ 623(a)(1) of the Age Discrimination in Employment Act] does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174, 177 (2009). "A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Id.* at 177–78.[1] "'[B]ut-for cause' does not mean 'sole cause.'" *Leal v. McHugh*, 731 F.3d 405, 415 (5th Cir. 2013). "[A]n employer may be liable under the [Act] if other factors contributed to . . . the adverse action, as long as age was the factor that made a difference." *Id.* (quotation marks omitted (quoting *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1277 (10th Cir. 2010) and finding the reasoning persuasive)).

---

[1] In a pending case, the Supreme Court is considering whether the "but-for" test or a more relaxed standard—whether age was *a* factor in an adverse employment decision—applies under the Age Discrimination in Employment Act provision for federal employees, 29 U.S.C. § 633a(a). *Babb v. Sec'y, Dep't of Veterans Affairs*, 743 F. App'x 280 (11th Cir. 2018), *cert. granted sub nom. Babb v. Wilkie*, (U.S. June 28, 2019) (No. 18-882); Pet'r's Br. at 1–2. Phillips 66 is a private company, and the Supreme Court has ruled that the private-sector provision of the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1), requires plaintiffs to meet the but-for standard. *See Gross*, 557 U.S. at 177–78. The facts of this case are analyzed under both causation standards out of an abundance of caution.

The Supreme Court has not decided whether the *McDonnell Douglas* framework applies when a plaintiff asserting that she was terminated because of age discrimination relies on circumstantial evidence, but the Fifth Circuit holds that it does. *Jackson*, 602 F.3d at 378. To make a *prima facie* showing of wrongful termination because of age, a plaintiff must show that: (1) she was fired; (2) she was qualified for the job; (3) she was within the protected class at the time of the firing; and (4) she was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise terminated because of her age. *Id.* (quoting *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007)). If the employee makes a *prima facie* showing and the employer articulates a legitimate, nondiscriminatory reason for the challenged employment decision, the plaintiff has the burden to avoid summary judgment by showing a factual dispute as to whether the reason was pretextual, with "evidence of disparate treatment or [evidence] that the employer's proffered explanation is false or unworthy of credence." *Jackson*, 602 F.3d at 378–79 (quotation marks omitted).

## II. The Facts Established by the Evidence

Undisputed competent summary judgment evidence establishes the material facts. Gaskin is a 57-year-old African-American woman who worked in various capacities at Phillips 66 from 1989 until 2017. (Docket Entry No. 25-1 at 2–3). When she learned on November 30, 2017, that she would be fired, Gaskin was about to turn 55. (*Id.*). Her last position at Phillips 66 was as a Senior Payroll Analyst. (Docket Entry No. 19-1 at 1). She has stated, and the company has not disputed, that her replacement is younger and Hispanic. (Docket Entry No. 11 at 8; Docket Entry No. 25-1 at 5).

Gaskin's employment required her to follow Phillips 66's policies and procedures. (Docket Entry No. 25-1, Gaskin Dep. at 17:24–18:3). Each year, including 2015 through 2017, she certified

7

in writing that she had reviewed and understood the company's Code of Business Ethics and Conduct. (*Id.* at 25:1–18). That Code told Phillips 66 employees to avoid situations presenting conflicts between their personal interests and those of the company; described potential conflicts of interest; and stated that it is important for employees to avoid even the appearance of conflict. (*Id.* at 25:19–27:6). The Code required employees to file written statements with their managers disclosing actions that might involve actual or apparent conflicts of interest. (*Id.* at 27:16–23; Docket Entry No. 19-1 at 19). One purpose of the disclosure requirement, and of the separate Phillips 66 Employment of Relatives Policy, was to flag conflicts of interest arising from hiring relatives of Phillips 66 personnel. (Docket Entry No. 19-1 at 24; Docket Entry No. 25-1, Gaskin Dep. at 26:8–13, 34:22–37:6). The Code stated that an employee's knowing failure to disclose a conflict could trigger termination. (Docket Entry No. 19-1 at 19; Docket Entry No. 25-1, Gaskin Dep. at 28:5–10).

As a Senior Payroll Analyst, Gaskin's duties included serving as a liaison between Phillips 66 and Kelly Services, a staffing agency that Phillips 66 used to obtain workers. (Docket Entry No. 25-1, Gaskin Dep. at 58:6–14). Gaskin's analyst tasks did not directly involve her in deciding Phillips 66 positions would be filled by Kelly Services employees, but she worked with Kelly Services on safety documentation and payroll issues. (*Id.* at 58:15–17, 59:11–19).

In August 2017, a Phillips 66 human-resources associate, Danielle Brunner, asked Gaskin if she knew anyone who would be interested in a billing-clerk job at Phillips 66. (*Id.* at 62:15–64:10). Gaskin recommended her sister, Cheryl Jackson, for the position and forwarded Brunner Jackson's resume. (*Id.*). Although Gaskin testified in her deposition that she verbally told Brunner—who was not her manager—that Jackson was her sister, Gaskin admitted that she did not notify her manager or take steps to notify others of the potential conflict, as Phillips 66 policy

required. (*Id.* at 34:5–16, 64:14–65:21; Docket Entry No. 19-1 at 19). Nor did she disclose her relationship with Jackson in writing to anyone, including Brunner, which was also required. (Docket Entry No. 19-1 at 19; Docket Entry No. 25-1, Gaskin Dep. at 34:5–16, 64:14–65:21).

During the search to fill the billing-clerk position, Kelly Services sent Gaskin the resumes of five candidates. (Docket Entry No. 25-1, Gaskin Dep. at 66:3–8). Later, a Kelly Services representative emailed Gaskin "to touch base with [her] and see if [she] had a chance to review the resumes." (*Id.* at 71:13–20). Gaskin responded, "Yes, I need to check with the hiring manager to see if he would like to consider." (*Id.* at 72:15–18). But Gaskin testified in her deposition that she never forwarded the five Kelly Services resumes to the Phillips 66 hiring manger or anyone else. (*Id.* at 66:15–21, 69:3–8, 74:11–14).[2] She forwarded only Jackson's resume, and the Phillips 66 hiring manager considered only Jackson and two other candidates, without seeing the Kelly Services candidates' resumes. (Docket Entry No. 19-1 at 4).

On August 21, 2017, Phillips 66 hired someone other than Jackson for the billing-clerk job. (*Id.*). In September 2017, the company "transferred" that person elsewhere and hired Jackson in that person's place. (*Id.*). Jackson started working for Phillips 66 in October 2017. (*Id.*). On October 20, Phillips 66's human-resources department received a complaint that Jackson was Gaskin's sister and that Gaskin had failed to disclose that she had recommended her sister for the billing-clerk job. (*Id.* at 3).

Krystle King, Gaskin's direct supervisor, investigated the complaint. (*Id.* at 2–3). King interviewed several individuals, including Gaskin, and reviewed Gaskin's company email account. (*Id.* at 3). King found no evidence that, when recommending her sister for the clerk position or

---

[2] Gaskin testified that she thought Brunner was handling the hiring process, but she recognized that Brunner was not copied on the email with the five resumes. (Docket Entry No. 25-1, Gaskin Dep. at 69:16–23).

9

when submitting her sister's resume, Gaskin had disclosed the relationship in writing to King or anyone else at the company. (*Id.*). In her interview with King, Brunner—the human-resources person who had asked Gaskin for the billing-clerk candidate referral—said that Gaskin called Jackson a "friend" and did not verbally or in writing disclose the family relationship and potential conflict. (*Id.*). Gaskin told King in her interview that she had told Brunner that Jackson was Gaskin's sister. (Docket Entry No. 25-1, Gaskin Dep. at 81:15–21). King found otherwise. (Docket Entry No. 19-1 at 3).

King also found that Gaskin did not forward the five Kelly Services resumes to anyone at Phillips 66. (*Id.*). According to Gaskin, when King asked her if she received resumes from Kelly Services for the billing-clerk position, she responded that she "could not recall." (Docket Entry No. 25-1, Gaskin Dep. at 82:11–15).[3] King concluded that Gaskin had violated company policy by failing to disclose the conflict of interest, failing to forward the resumes, and by being untruthful during the investigation. (Docket Entry No. 19-1 at 4; Docket Entry No. 25-1 at 40).

On November 30, 2017, Phillips 66 informed Gaskin that she would be fired. (Docket Entry No. 19-1 at 4; Docket Entry No. 25-1 at 40). The company told her that she could resign or be fired; she chose termination. (Docket Entry No. 25-1, Gaskin Dep. at 83:10–22). To ensure that Gaskin's termination did not impact her retirement benefits, Phillips 66 used her remaining vacation and excused-leave days to push her official termination date to December 21, two days after she had become eligible for retirement on her 55th birthday. (Docket Entry No. 19-1 at 4).[4]

---

[3] According to King, Gaskin responded definitively during the investigation that she did not receive any resumes from Kelly Services. (Docket Entry No. 19-1 at 4).

[4] Gaskin testified that the company could not take away her retirement, "regardless" of the termination. (Docket Entry No. 25-1, Gaskin Dep. at 83:23–84:6).

### III. Analysis

#### A. The Race-Discrimination Claims

Gaskin makes a *prima facie* showing of race discrimination. She is African-American; Phillips 66 does not argue that she was unqualified for her position as a Senior Payroll Analyst; she was fired; and she states, and Phillips 66 does not dispute, that the company replaced her with a non-African-American employee. *See Harville*, 945 F.3d at 875. But her claims do not survive the rest of the *McDonnell Douglas* analysis.

Phillips 66 met its burden to provide legitimate, nondiscriminatory reasons for firing Gaskin. *See Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999) (an employer's belief that an employee violated a conflict of interest policy was a legitimate reason for termination, despite the employee's argument that no actual conflict existed); *Horton v. Entergy Servs., Inc.*, No. 3:09-cv-66, 2012 WL 1098470, at *7–8 (S.D. Miss. Mar. 31, 2012) (granting summary judgment and dismissing a discrimination claim when the employer terminated the employee, in part, for dishonesty during an investigation, which was a legitimate, nondiscriminatory reason for the action); *Mayberry v. Mundy Contract Maint., Inc.*, No. H-03-5221, 2005 WL 1965956, at *6 (S.D. Tex. Aug. 16, 2005) (an employer's good-faith belief that an employee violated company policy by providing untruthful statements during an investigation was a legitimate, nondiscriminatory reason for firing).

Gaskin has not produced or identified evidence that, when viewed in the light most favorable to her, would allow a reasonable jury to find that the reasons Phillips 66 proffered for her termination were pretexts for race discrimination. *See Vaughn*, 665 F.3d at 637–38. Gaskin argues that her firing was discriminatory because Phillips 66 treated her less favorably than non-African-American peers and replaced her with a non-African-American employee. (Docket Entry No. 25 at 3–4). She also claims that: she did not know about the investigation until she learned

she would be terminated; she complied with the Phillips 66 protocols; "there was no indication" that the company followed its Progressive Discipline Policy; the investigation was cursory; and that Phillips 66's stated reasons for terminating her employment were "changing," "erroneous," and "inconsistent." (Docket Entry No. 25 at 3, 8, 10; Docket Entry No. 25-1 at 3–4; Docket Entry No. 26 at 9). These arguments fail.

The four people who Gaskin alleges received more favorable treatment than she did for similar violations of Phillips 66's conflict of interest policy, based on this record, are not comparators. *See Vaughn*, 665 F.3d at 637 ("Vaughn's attempt to establish pretext through evidence of disparate treatment fails for lack of an appropriate comparator."). "Disparate treatment occurs where an employer treats one employee more harshly than other 'similarly situated' employees for 'nearly identical' conduct." *Id.* (citing *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)). "Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated. . . . employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated." *Lee*, 574 F.3d at 259–60.

It is undisputed that none of the four people Gaskin identifies as comparators had Krystle King as his or her supervisor. (Docket Entry No. 19-1 at 4–5).[5] None of the purported comparators was a Senior Payroll Analyst. (*Id.*). None had been accused of failing to pass along job candidates'

---

[5] Gaskin's former supervisor, Michael Saiz, supervised one purported comparator, Michael Alan, starting approximately when Gaskin became a Senior Payroll Analyst under Krystle King, in December 2016. (Docket Entry No. 19-1 at 1, 4–5; Docket Entry No. 25-1, Gaskin Dep. at 90:19–22). Saiz was one of the people who reviewed and approved the decision to terminate Gaskin, but it was King who investigated and recommended firing her. (Docket Entry No. 19-1 at 4).

resumes or being untruthful during a company investigation. (*See* Docket Entry No. 1 at ¶¶ 19–23).

Gaskin focuses on Teresa Garrison, alleging that Phillips 66 treated Garrison more favorably because she referred a family member for an open position at Phillips 66, did not disclose the relationship, and she was not investigated or terminated like Gaskin. (Docket Entry No. 1 at ¶ 20, Docket Entry No. 25 at 7–8). First, it is undisputed that Gaskin's conduct was investigated after the human-resources department received a complaint that Gaskin referred her sister for the billing-clerk position and failed to disclose the relationship. (Docket Entry No. 19-1 at 3). There is no evidence Phillips 66 had received a similar complaint about Garrison.

More importantly, Phillips 66's reasons for terminating Gaskin are not simply that she recommended a relative for an open position without disclosing the relationship. King's investigation also substantiated that Gaskin failed to forward resumes of qualified applicants for the same position to the hiring manager, and was untruthful during the investigation. There is no evidence that Garrison engaged in similar misconduct. Gaskin failed to identify summary judgment evidence of a similarly situated individual outside her protected class who was treated less harshly than she was in incidents involving "nearly identical" circumstances. *See Barfield v. Fed. Express Corp.*, 351 F. Supp. 3d 1041, 1055 (S.D. Tex. 2019); *see also Moore v. Univ. Miss. Med. Ctr.*, 719 F. App'x 381, 386 (5th Cir. 2018) (rejecting a proffered comparator because the plaintiff could not establish that the comparator violated the same policy that her employer determined she violated).

Gaskin's arguments that Phillips 66 did not follow its Progressive Discipline Policy, conducted a cursory investigation, and did not inform her of the investigation until she learned she would be fired do not create factual disputes material to determining that Gaskin's failure to

disclose her referral of a relative for employment, failure to forward other candidates' resumes, and alleged untruthful statements were pretexts for discrimination. She does not specify what disciplinary procedures Phillips 66 failed to follow or explain whether the Progressive Discipline Policy applied to the offenses that the company found she committed. (*See* Docket Entry No. 25-1 at 42–43 (the policy distinguishes between "minor offenses" and those that warrant "immediate discharge")). She does not point to evidence indicating that the investigation was cursory. Her summary judgment brief's assertion that Phillips 66 did not attempt to confirm "whether Gaskin communicated the possible conflict" does not create a material factual dispute, given King's unchallenged and detailed account of her investigation. (*Compare* Docket Entry No. 19-1 at 3–5, *with* Docket Entry No. 25 at 10).

The record undermines Gaskin's arguments that Phillips 66 provided erroneous and inconsistent grounds for termination and that she did comply with company policy. The record includes uncontroverted evidence that Gaskin forwarded her sister's resume for a job vacancy without disclosing the family relationship in writing to her management, as Phillips 66 policy required.[6] The evidence shows that she failed to send five resumes submitted for the vacancy by a staffing agency the company used. And the record demonstrates that the company had a good-faith basis to find that Gaskin was untruthful during the investigation because Brunner—the human-resources contact—contradicted Gaskin's claim that Gaskin told Brunner about the family relationship of the individual she recommended for hire.

"Management does not have to make proper decisions, only non-discriminatory ones." *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005); *see also Vought Aircraft*

---

[6] Gaskin emphasizes her claim that she verbally disclosed the potential conflict to Brunner—who Gaskin says was in company management—and therefore complied with the disclosure policy. (*See* Docket Entry No. 25 at 9). This argument does not help Gaskin because Brunner was not *her* manager and Gaskin admits that she did not disclose the conflict in writing.

14

*Co.*, 55 F.3d at 1091 ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive."). "Employment discrimination laws are 'not intended to be a vehicle for judicial second-guessing of business decisions, nor . . . to transform the courts into personnel managers.'" *Bryant*, 413 F.3d at 478 (quoting *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507–08 (5th Cir. 1988)). Gaskin has not submitted or identified evidence creating factual disputes material to determining that Phillips 66's investigation was in good faith. As noted, Gaskin admitted that she did not forward the Kelly Services resumes or provide a written conflict of interest disclosure to her supervisor or anyone else at the company. (Docket Entry No. 25-1, Gaskin Dep. at 34:5–16, 64:14–65:21, 66:15–21, 69:3–8, 74:11–14).[7]

Gaskin's argument that Phillips 66's Equal Employment Opportunity Commission Position Statement is inconsistent with its court filings is also unavailing. Although the Position Statement did not mention untruthfulness during the company investigation as a termination ground, and said that failing to disclose the conflict and forward the resumes were the "sole" grounds for the firing, the termination letter did cite Gaskin's allegedly untruthful statements as a basis. (Docket Entry No. 25-1 at 40; Docket Entry No. 26-7 at 4). The Fifth Circuit has clarified that:

> "[I]n *Burton*, we simply held . . . that a purported reason that only comes to light *after* the decision to terminate has been made cannot be the real reason for termination; . . . we have never held that an employer giving additional reasons to the district court to supplement those given to the EEOC supports an inference of pretext. The mere fact that [the employer] provided the EEOC with only one of [the employer's] three justifications for terminating [the employee's] employment does not constitute a substantial showing of pretext."

---

[7] Gaskin's summary judgment brief asserts, without support or citation, that the written disclosure requirement is "contrary to" Phillips 66 policy. (Docket Entry No. 25 at 9). This assertion does not raise a material factual dispute.

*Bennett v. Consol. Gravity Drainage Dist. No. 1*, 648 F. App'x 425, 430–31 (5th Cir. 2016) (affirming the trial court's grant of summary judgment).

### B. The Age-Discrimination Claim

Gaskin makes almost identical arguments to support her race and age-discrimination claims. She offers no evidence specific to the age cause of action except for a passing reference to the fact that she was "nearing retirement age at the time of her termination." (Docket Entry No. 26 at 6).

Gaskin makes a *prima facie* showing of age discrimination because: she was fired; Phillips 66 does not argue that she was unqualified for her job; she was over 40 when she was fired;[8] and she states, and Phillips 66 does not dispute, that the company replaced her with a younger employee. *See Jackson*, 602 F.3d at 378. As explained above, Phillips 66 stated legitimate, nondiscriminatory reasons for her termination. *See id.*

Gaskin does not point to any evidence creating factual disputes material to determining that her age was not the "but-for" cause of her firing and that Phillips 66's grounds for termination were not pretextual. *See Gross*, 557 U.S. at 177; *Jackson*, 602 F.3d at 378–79. Her claim would fail even under a more lenient causation test than but-for. The firing's proximity to Gaskin's retirement-eligibility date does not create a material factual dispute because, as Gaskin testified, the firing did not impact her retirement. (Docket Entry No. 19-1 at 4; Docket Entry No. 25-1, Gaskin Dep. at 83:23–84:6). Phillips 66 investigated the complaint against Gaskin promptly and then delayed her official termination date to ensure that she would still be retirement eligible. (Docket Entry No. 19-1 at 3–4).

---

[8] The Age Discrimination in Employment Act protects individuals "who are at least 40 years of age." 29 U.S.C. § 631(a).

The four people who Gaskin alleges received better treatment than she did are not comparators in the age-discrimination context, for the same reasons discussed above in the race-discrimination context. *See Hoffman v. Baylor Health Care Sys.*, 597 F. App'x 231, 236 (5th Cir. 2015) (per curiam) (citing *Lee*, 574 F.3d at 260 (as in Title VII race-discrimination cases, under the Age Discrimination in Employment Act, "employees [are] not similarly situated when, compared to the plaintiff, the employees have different work responsibilities or different supervisors, or work in different company divisions, or were subject to adverse employment actions too removed in time or for violations too dissimilar in type")); *Barfield*, 351 F. Supp. 3d at 1054–55 (applying Title VII case law on comparators to an age-discrimination case). Gaskin's purported comparators are not similarly situated to her because they had different jobs, did not have Krystle King as their supervisor, and were not accused of all of the offenses that Phillips 66 found that Gaskin committed. The four employees' experiences do not help Gaskin avoid summary judgment on her age-discrimination claim.

For the reasons explained above, Gaskin's other arguments that she satisfied company policy and challenging Phillips 66's good faith and compliance with its discipline procedures do not create factual disputes material to determining that age discrimination did not cause her firing. The competent summary judgment evidence establishes that Phillips 66 fired Gaskin in good faith for violating company rules, not because of age-based animus.

## IV. Conclusion and Order

Phillips 66's motion for summary judgment, (Docket Entry No. 19), is granted. Final judgement is entered by separate order.

SIGNED on January 30, 2020, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge